In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00173-CR
______________________________


LARRY EVERETT WHITE, JR., Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 21,420


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â On June 6, 2003, Larry Everett White, Jr., waived his right to a jury trial and pled guilty in
Hunt County cause number 21,420 to assaulting a public servant.


 See Tex. Pen. Code Ann. Â§ 22.02
(Vernon Supp. 2004) (assaulting a public servant in line of duty is a first-degree felony). The
indictment further alleged White had been previously, finally, and sequentially convicted of two
additional felony offenses. After the trial court admonished White about the enhanced punishment
range applicable in this case, White pled "true" to enhancement allegations. See Tex. Pen. Code
Ann. Â§Â 12.42(d) (Vernon Supp. 2004) (twenty-five years is the minimum punishment for a first-degree felony with two priors; maximum of ninety-nine or life). The trial court then ordered a
presentence investigation (PSI) report.
Â Â Â Â Â Â Â Â Â Â Â Â After considering further testimony on punishment and the PSI report at a July 24, 2003,
hearing, the trial court sentenced White to fifty years' imprisonment. (There was not a negotiated
plea agreement in this case.) White timely appealed his conviction and sentence to this Court. 
Â Â Â Â Â Â Â Â Â Â Â Â On November 20, 2003, White's appellate counsel filed an Anders


 brief in which he
professionally discussed the record and concluded there were no arguable grounds for appeal. As
required by Anders, counsel also filed a motion to withdraw. Counsel sent White a copy of the
appellate brief and informed White of his right to file a pro se response and right to review the
record. 
Â Â Â Â Â Â Â Â Â Â Â Â This Court informed White at that time his response, if any, was due within thirty days. As
of this date, we have not received a pro se response. We have independently reviewed the record
and the brief filed by counsel in this appeal, and we agree there are no arguable issues that would
support an appeal in this case. Dr. Michael Pittman evaluated White and submitted a report to the
trial court in which Pittman concluded White was legally competent to stand trial. At the guilty plea
hearing, White's answers to the trial court's questions were articulate and responsive. White agreed
with his trial counsel that, by pleading guilty to each of the five charges, he avoided the potentiality
for cumulated sentencing, a risk inherent had he pursued separate trials in each of the cases. White's
trial counsel also informed the trial court that, though White's competency had once been an issue,
White did understand the pending charges and had been able to assist counsel in preparing a defense. 
Â Â Â Â Â Â Â Â Â Â Â Â The evidence presented at the sentencing hearing revealed White had twice previously been
convicted of delivery of controlled substances and also of being a felon in possession of a firearm. 
Moreover, White pled guilty to four other serious felony offenses in conjunction with the crime
underlying this case. There was testimony that suggested White had a substance abuse problem,
which may have contributed to his conduct underlying the crimes now on appeal. The punishment
assessed in this case was within the range of punishment permitted under Texas law. Accordingly,
we affirm the trial court's judgment.
Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â March 2, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â March 18, 2004

Do Not Publish



the Lehmann language, stating "[a]ll relief requested by any party in this
case that is not expressly granted by this judgment is denied. This judgment finally disposes of all
parties and claims in this action, is a final judgment, and is therefore appealable." In such a case,
where the language of the order suggests the court intended the summary judgment to be final, but
adjudicated counterclaims which were not brought by summary judgment, the judgment is "final-erroneous, but final." Id. at 200. 

 A judgment that grants more relief than requested is "subject to reversal, but it is not, for that
reason alone, interlocutory." Id. "In those circumstances, the order must be appealed and reversed." 
Id. at 206. If we determine Eastburn was not entitled to summary judgment on her claims, the entire
judgment of the trial court will be reversed. Page v. Geller, 941 S.W.2d 101, 102 (Tex. 1997). 
However, if we determine that "the summary judgment in favor of the plaintiff on its claims was
proper, [we must] affirm the judgment of the trial court in part, reverse in part since only a partial
summary judgment should have been rendered, and remand the case" for further proceedings in the
trial court. Bandera Elec. Coop. v. Gilchrist, 946 S.W.2d 336, 336 (Tex. 1997); Page, 941 S.W.2d
at 102; Jones v. Ill. Employers Ins. of Wausau, 136 S.W.3d 728, 743-44 (Tex. App.--Texarkana
2004, no pet.); Pinnacle Data Servs. v. Gillen, 104 S.W.3d 188, 199 (Tex. App.--Texarkana 2003,
no pet.); Klevin v. Tex. Dep't of Criminal Justice--I.D., 69 S.W.3d 341, 344 (Tex. App.--Texarkana
2002, no pet.). 

III. Standard of Review 

 A trial court's summary judgment is reviewed de novo. Laidlaw v. Waste Sys. v. City of
Wilmer, 904 S.W.2d 656, 660 (Tex. 1995); Lamar Corp. v. City of Longview, 270 S.W.3d 609, 613
(Tex. App.--Texarkana 2008, no pet.). Summary judgment is proper when a movant establishes that
there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex.
R. Civ. P. 166a(c); French v. Gill, 252 S.W.3d 748, 751 (Tex. App.--Texarkana 2008, pet. denied);
Powers v. Adams, 2 S.W.3d 496, 497 (Tex. App.--Houston [14th Dist.] 1999, no pet.) (citing Nixon
v. Mr. Property Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985)). In deciding whether there is a
disputed material fact issue which precludes summary judgment, proof favorable to the nonmovant
will be taken as true. Nixon, 690 S.W.2d at 548-49. We indulge every reasonable inference in favor
of the nonmovant. Limestone Prods. Distribution, Inc. v. McNamara, 71 S.W.3d 308, 311 (Tex.
2002). 

IV. Summary Judgment on Eastburn's Breach of Contract Claim Was Proper

 A. The Unambiguous Lease Provisions

 Both parties believe the lease's unambiguous language supports their position. We must first
answer the question of whether this lease contract is ambiguous. This is a question of law which we
review de novo. Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 861 (Tex. 2000). We
cannot ignore the clear language of an unambiguous contract. Consol. Petroleum Partners, I, LLC
v. Tindle, 168 S.W.3d 894, 899 (Tex. App.--Tyler 2005, no pet.). If the lease provision above can
be given a certain or definite meaning or interpretation, it is not ambiguous, and we must simply
apply the language in the lease. Lopez, 22 S.W.3d at 861. However, where there are two reasonable
interpretations of the same language in a document, ambiguity arises. Id. 

 Construction of the lease provisions was key in resolving the summary judgment. Section
5.2 of the lease stated:

 Upon receipt of Landlord's prior written approval, Tenant may from time to
time, at its own expense, alter, renovate or improve the interior of the PremisesÂ .Â .Â .Â so
as not to weaken or impair the strength or lessen the value of the Building .Â .Â . .


 . . . . 


 At the expiration or other termination of this Lease, and upon obtaining the
prior written consent of Landlord, Tenant shall remove such alterations, decorations,
additions and improvements and restore the Premises as provided in Section 5.5, and
if Tenant fails to do so and moves from the Premises, all such alterations,
decorations, additions and improvements shall become the property of Landlord and
Landlord may, at Tenant's expense, remove all such alterations, decorations,
additions and improvements.


Section 5.5 entitled "Trade Fixtures" provided:

 Tenant shall have the right, at the termination of this Lease, to remove any and all
trade fixtures, equipment and other items of personal property not constituting a part
of the freehold which it may have stored or installed in the Premises, including, but
not limited to, counters, shelving, showcases, chairs and movable machinery
purchased or provided by Tenant and which are susceptible of being moved without
damage to the PropertyÂ .Â .Â . ; and provided further that Tenant, at its own cost and
expense, shall repair any damage to the Premises caused thereby. .Â .Â .Â  Further, upon
termination of this Lease, or within five (5) days thereafter, Tenant shall replace the
wall surfaces in the kitchen are [sic] of the Premises with taped and floated sheet
rock. The right granted Tenant in this Section shall not include the right to remove
any plumbing or electrical fixtures or equipment, heating or air conditioning
equipment, floor coverings (including wall-to-wall carpeting) glued or fastened to the
floors or any paneling, tile or other materials fastened or attached to walls or ceilings,
all of which shall be deemed to constitute a part of the freehold, and, as a matter of
course, shall not include the right to remove any fixtures or machinery that were
furnished or paid for by Landlord. The Premises and the immediate areas in front,
behind and adjacent to it shall be left in a broom-clean condition, and in the condition
in which they existed as of the Lease Commencement Date, normal wear and tear
excepted. .Â .Â . If Tenant shall fail to remove its trade fixtures or other property at the
termination of this Lease or within five (5) days thereafter, such fixtures and other
property not removed by Tenant shall be deemed abandoned by Tenant, and, at the
option of Landlord, shall become the property of Landlord, and Landlord may, at
Tenant's expense, remove such trade fixtures and other property and store or dispose
of the same, at Tenant's sole cost and expense. 


 Section 10.5, entitled "Surrender of Premises and Holding Over," stated:


 At the expiration of the tenancy, Tenant shall surrender the Premises in good
condition, reasonable wear and tear exceptedÂ .Â .Â .Â Tenant shall remove all its trade
fixtures and any alterations or improvements, subject to the provisions of Section 5.5,
before surrendering the Premises, and shall repair, at its own expense, any damage
to the Premises caused thereby. 


 When read as a whole, we believe the language in the contract is unambiguous for the
reasons discussed below. The Cammacks suggest that they were not responsible for removing the
items complained of because Section 5.5 of the lease, entitled "Trade Fixtures," does not give them
the right to remove: trade fixtures which they may have installed, plumbing, electrical heating or
air conditioning equipment, floor coverings, tiles, or other materials constituting a part of the
freehold. "Trade Fixtures" have been defined many times by the courts to include:

 such articles as may be annexed to the realty by the tenant to enable him properly or
efficiently to carry on the trade, profession, or enterprise contemplated by the tenancy
contract or in which he is engaged while occupying the premises, and which can be
removed without material or permanent injury to the freehold.


Boyett v. Boegner, 746 S.W.2d 25, 27 (Tex. App.--Houston [1st Dist.] 1988, no pet.); see
Ashford.Com, Inc. v. Crescent Real Estate Funding III, L.P., No. 14-04-00605-CV, 2005
WLÂ 2787014, at *9 (Tex. App.--Houston [14th Dist.] Oct. 27, 2005, no pet.) (mem. op.) (citing
Connelly v. Art & Gary, Inc., 630 S.W.2d 514, 515 (Tex. App.--Corpus Christi 1982, writ ref'd
n.r.e.)). In other words, trade fixtures are those that are only removable without permanent or
material injury to the premises. Ashford.Com, 2005 WL 2787014, at *9; Connelly, 630 S.W.2d at
515. We must reject the Cammacks' argument because the items Eastburn required to be removed
are improvements or alterations, as admitted by Jason Cammack in his affidavit, and, by definition,
are not trade fixtures such that they could be covered by Section 5.5. 

 We harmonize and give effect to all the lease provisions in relation to the whole instrument
so that none will be rendered meaningless. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). Here,
Sections 5.2 and 10.5 set forth the general requirement that the Cammacks must surrender the
premises in good condition, remove all trade fixtures and alterations and improvements, restore the
premises, and repair any damage to the property caused due to removal at their own expense. Even
Section 5.5 reiterates the general requirement that the Cammacks are to leave the property in
"broom-clean condition, and in the condition in which they existed as of the Lease Commencement
Date." 

 B. The Cammacks' Breach 

 When reviewing the laundry list of complaints in Eastburn's demand notice, it is clear that
several of Eastburn's complaints involved failure to clean the premises, a duty that Jason realized he
had, but, by his admission, failed to perform. Although the Cammacks removed their trade fixtures,
according to Eastburn's affidavit, they did nothing to remove their improvements and restore the
premises. Specifically, Jason admitted to not removing the 1,500-gallon grease trap, stainless steel
on the wall behind the stove, vents on the roof of the kitchen area, and the FRP from the walls. He
also admitted to throwing away Eastburn's can lights and replacing them with fluorescent lighting. 
Eastburn's uncontroverted affidavit stated the walls had not been repaired with taped and floated
drywall as required by Section 5.5. Eastburn's affidavit also mentioned the Cammacks failed to
make repairs to restore the premises to its condition prior to the lease, including the following
admitted by Jason: failure to repair holes in the roof, ceiling, floor and tile, replace Eastburn's lights
which were thrown away, and cap and cover various gas and plumbing fixtures and an electrical
conduit. Eastburn's uncontroverted affidavit also complains of the Cammacks' failure to repair
damaged or missing molding, a damaged window, and restore the ground where the grease trap was
placed after its removal. Photographs submitted in support of the summary judgment motions
confirm the condition in which the property was left. 

 Further, Eastburn's affidavit also established that the Cammacks continually failed to pay rent
on time, a fact that was never contested by the Cammacks. Also, Section 10.5 of the lease, entitled
"Surrender of Premises and Holding Over," provided:

 Tenant shall remove all its trade fixtures and any alterations or improvements,
subject to the provisions of Section 5.5, before surrendering the Premises, and shall
repair, at its own expense, any damage to the Premises caused thereby. Tenant's
obligations to observe or perform this covenant shall survive the expiration or other
termination of this lease. If Tenant remains in possession of the Premises after the
expiration of the tenancy created hereunder, whether or not with the consent or
acquiescence of the Landlord, and without the execution of a new lease, Tenant, at
the option of landlord, shall be deemed to be occupying the Premises as a tenant at
will on a month-to-month tenancy. 


Because the Cammacks failed to remove their improvements and restore the premises, they were
subject to the holdover provision under the lease. The affidavit of Jason states the lease terminated
on June 30, 2007, and that Eastburn changed the locks on July 1, 2007, and only allowed entry onto
the premises during her business hours, as stated in the lease. He complains that the Cammacks
should not be held liable for holdover damages because Section 5.5 of the lease allowed a five-day
period to remove trade fixtures. However, this five-day period was allowed only if the Cammacks
were not in default, and did not guarantee twenty-four-hour access. Thus, the Cammacks failed to
present a genuine issue of material fact to counter Eastburn's holdover claim. 

 In sum, the summary judgment evidence left no issue of material fact regarding the
Cammacks' breach of lease. 

 C. Damages and Attorney's Fees

 On appeal, the Cammacks do not challenge the amount of damages, but simply claim
Eastburn was not entitled to recover them because she was not entitled to summary judgment. We
overrule this point of error. (5) 

 The lease agreement provided attorney's fees to the prevailing party for any litigation arising
out of enforcement of the lease. Tex. Civ. Prac. & Rem. Code Ann. §Â 38.001(8) (Vernon 2008). 
The Cammacks complain that Eastburn's attorney's fees are not reasonable or necessary, especially
since counsel did not furnish a time record. Production of a time record is not essential when
requesting attorney's fees. While reasonableness of an attorney's fee award often presents a question
of fact, an "affidavit filed by the movant's attorney that sets forth his qualifications, his opinion
regarding reasonable attorney's fees, and the basis for his opinion will be sufficient to support
summary judgment, if uncontroverted." In re Estate of Tyner, No 12-08-00232-CV, 2009 WL
1609963, at *4 (Tex. App.--Tyler June 10, 2009, no pet.) (citing Basin Credit Consultants, Inc. v.
Obregon, 2Â S.W.3d 372, 373 (Tex. App.--San Antonio 1999, pet. denied)); Haden v. Sacks, No 01-01-00200-CV, 2009 WL 1270372, at *5 (Tex. App.--Houston [1st Dist.] May 7, 2009, no pet. h.). 
Counsel submitted an affidavit of attorney's fees totaling $19,945.00. It detailed the involvement
with the case, stated counsel's associate worked 43.8 hours at the rate of $125.00 per hour, and that
he worked 84 hours, 9.2 hours of which were billed at $150.00 per hour and 74.8 hours of which
were billed at $175.00 per hour. Eastburn's affidavit established that she was required to pay these
fees. 

 Based on a false assumption that the final order denied the "holdover and cleaning claims,"
the Cammacks argue Eastburn should not receive attorney's fees because their counsel did not
segregate the "cleaning and holdover claims" from the restoration claims. (6) When a plaintiff seeks
to recover attorney's fees where at least one claim supports an award of attorney's fees and at least
one does not, segregation is required unless the claims arise out of the same transaction and are so
interrelated that the award or denial depends on the same facts. Cotten v. Weatherford Bancshares,
Inc., 187 S.W.3d 687, 709 (Tex. App.--Fort Worth 2006, pet. denied); Lesikar v. Rappeport, 33
S.W.3d 282, 317 (Tex. App.--Texarkana 2002, pet. denied); Flint & Assocs. v. Intercontinental Pipe
& Steel, Inc., 739 S.W.2d 622, 624-25 (Tex. App.--Dallas 1987, writ denied). All of Eastburn's
claims were for breach of the lease, any of which would support an award for attorney's fees. 
Further, the claims all arose from the same transaction and involved essentially the same facts. 
Segregation of the breach of lease claims was not needed in this case. 

 Thus, unless the necessity for or the reasonableness of attorney's fees was controverted by
raising a fact question in a manner which would successfully preclude the summary judgment award
of attorney's fees, Eastburn was entitled to have them awarded to her. "[A] summary judgment
award of attorney's fees is improper where the nonmovant produces a controverting affidavit
regarding fees." AU Pharm., Inc. v. Boston, 986 S.W.2d 331, 338 (Tex. App.--Texarkana 1999, no
pet.). To constitute proper summary judgment evidence, an affidavit must be made on personal
knowledge, set forth facts which would be admissible in evidence, and show the affiant's
competence. Id.; see Tex. R. Civ. P. 166a(f). "Conclusory statements or statements based purely
on opinion are not competent summary judgment evidence." Hawthorne v. Star Enter., Inc., 45
S.W.3d 757, 759 (Tex. App.--Texarkana 2001, pet. denied); see Haden, 2009 WL 1270372, at *5. 
Although an expert witness's opinion testimony in a summary judgment affidavit can defeat a
summary judgment claim, it is the basis of the expert's claim, and not the expert's bare opinions
alone, that can settle a question as a matter of law. See Burrow v. Arce, 997 S.W.2d 229, 235 (Tex.
1999).

 Here, the affidavit submitted by the Cammacks' attorney attempting to controvert the merit
of the movant's summary judgment affidavit supporting an award of attorney's fees which had been
incurred stated, "[t]he attorney fees plaintiff's attorney claims are not necessary or reasonable, and
they are an excessive and bad faith demand" without providing a rationale upon which the statement
was based. The affidavit contains no recitation that the hourly rates charged by Eastburn's attorneys
were unreasonably high, that the time alleged to have been expended was excessive to accomplish
the work which was provided, that work performed by her attorneys was unnecessary to prosecute
the case, or that the work as alleged was not performed. In sum, there is no evidence underlying the
conclusion that Eastburn's requested attorney's fees at the trial level are unreasonable or unnecessary. 
Therefore, since the affidavit does not provide any basis for the statement made, the statement is
simply conclusory in nature. The remainder of the affidavit claims that the fees are unreasonable
because the lease did not support an award for Eastburn, the claims were not segregated, and
Eastburn's summary judgment motion was groundless. These are legal arguments, not facts, which
are resolved in Eastburn's favor. The controverting affidavit makes no mention of Eastburn's
anticipated attorney's fees on appeal, and those fees remain uncontested. 

V. Conclusion 

 We affirm the summary judgment of the trial court on Eastburn's claims, and by implication,
against the Cammacks' counterclaim regarding the security deposit. However, because the trial court
did not adjudicate the Cammacks' remaining counterclaims, we reverse and remand in part for
further proceedings consistent with this opinion. 




 Bailey C. Moseley

 Justice


Date Submitted: July 13, 2009

Date Decided: September 25, 2009


1. The lease was entered on June 6, 2005, and expired by its own terms on June 30, 2007. 
2. Fiberglass-reinforced plastic. 
3. "A motion for summary judgment shall state the specific grounds therefor. Except on leave
of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and
served at least twenty-one days before the time specified for the hearing." Tex. R. Civ. P. 166a(c). 
We do not construe the Cammacks' brief references to its counterclaims in a motion filed less than
twenty-one days before the summary judgment hearing as a proper motion for summary judgment
on the counterclaims. Also, it appears to us that the Cammacks mistakenly argued, through
references such as "[t]here is at least a fact issue whether Eastburn is entitled to keep all of the
deposit," that summary judgment on Eastburn's claims should be precluded because fact issues
existed regarding the Cammacks' amended counterclaims. 
4. Disposition of a particular issue may be inferred from other provisions of a judgment,
provided that the inference follows as a necessary implication. Matelski v. Matelski, 840 S.W.2d
124, 126 (Tex. App.--Fort Worth 1992, no writ) (citing Davis v. McCray Refrigerator Sales Corp.,
136 Tex. 296, 150 S.W.2d 377 (1941)). While we believe the trial court's grant of Eastburn's breach
of lease claim necessarily implied a ruling that Eastburn did not wrongfully withhold the security
deposit under the lease, we do not believe the same is true of the wrongful exclusion, and alleged
"failure of consideration," wherein the Cammacks sought credit for the weeks of rent in which
Eastburn allegedly failed to repair the air conditioning. 
5. The trial court awarded $36,069.06 in damages. This was supported by the uncontroverted
affidavit of Bala Duszik, owner of a construction company, who provided itemized bids and stated
the cost to restore the premises would be $19,155.00, with an additional $16,914.06 to remove the
grease trap and restore the ground. 
6. The final order simply denied the Cammacks' motion for summary judgment and granted
Eastburn's motion. It made no distinction relating to the holdover claims.